```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
M.P.L.,                                                     :
                                                            :
                           Petitioner,                      :
                                                            :     25-CV-5307 (VSB)(SDA)
            -against-                                       :
                                                            :
                                                            :     OPINION & ORDER
                                                            :
Paul Arteta, in his official capacity as Sheriff            :
of Orange County, New York and Warden of                    :
the Orange County Correctional Facility, et al.,            :
                                                            :
                           Respondents.                     :
                                                            :
------------------------------------------------------------X
```

Appearances:

Lucas Marquez
Molly Lauterback
Melinda Katherine Sheild
Brooklyn Defender Services
Brooklyn, NY
*Counsel for Petitioner*

Jessica F. Rosenbaum
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

On September 4, 2025, Magistrate Judge Stewart D. Aaron issued a Report and Recommendation ("Report" or "R&R") recommending that I grant Petitioner M.P.L.'s petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 seeking an order directing Respondents to provide him a constitutionally adequate bond hearing. (Doc. 24.) For the reasons set forth below, I ADOPT the Report and Recommendation and GRANT the Petitioner's Writ for Habeas Corpus. Specifically, I find (1) that Petitioner is entitled to an individualized

bond hearing in front of an immigration judge to determine whether his continued detention is justified, (2) that at such hearing, the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community, and (3) that the immigration judge must consider alternatives to detention and Petitioner's financial ability to pay a bond in making the bond determination.

I.  **Factual and Procedural Background**[1]

Petitioner (or "M.P.L."), a 46-year-old citizen of El Salvador, fled El Salvador after members of the Mara Salvatrucha gang ("MS-13") forced him to become a member after he resisted pressure to join the gang, and "continued to demand his assistance to carry out violent acts." (Pet. ¶ 26;[2] *see also* Doc. 15 ("M.P.L. Decl.") ¶¶ 5–8.) M.P.L. entered the United States unlawfully in 2007 and has been residing in Queens with his family for 18 years. (Pet. ¶ 27.) Since he arrived in the United States, M.P.L. has not been convicted of a crime. (*Id.*) However, his Record of Arrests and Prosecutions ("RAP") sheet shows that he was arrested in October 2006 in El Salvador for, among other things, aggravated homicide. (Doc. 11-2 ("Rap Sheet") at 2–3.)

On February 27, 2025, M.P.L. was arrested by the U.S. Drug Enforcement Administration on immigration charges and transferred to Immigration and Customs Enforcement ("ICE") custody.[3] (R&R 2; *see also* RAP Sheet 3.) The same day, ICE served M.P.L. with a Notice to Appear, (*see* Doc. 11-1), charging him as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as

---

[1] I assume familiarity with the more complete factual and procedural background as thoroughly set out in the Report, and I note that neither party objects to the facts as discussed in the Report.

[2] "Pet." refers to M.P.L.'s Petition for Writ of Habeas Corpus. (Doc. 1 ("Pet.").)

[3] It is unclear what precipitated M.P.L.'s arrest.

an alien present in the United States without being admitted or paroled and placed him in removal proceedings at the Varick Street Immigration Court in New York, NY. (Doc. 13 ("Morrow Decl.") ¶ 8.) ICE has detained M.P.L. at Orange County Jail in Goshen, New York, since February 28, 2025 "under the mandatory provisions of [8 U.S.C.] § 1226(c) due to alleged material support of a terrorist group," despite his claim that he was coerced into becoming a member of MS-13. (*Id.* ¶ 9; Pet. ¶¶ 11, 31.)

On March 12, 2025, Petitioner admitted the allegations against him in the Notice to Appear except the date of entry into the United States, which he claimed was in or about 2007. (Morrow Decl. ¶ 12.) On March 24, 2025, Petitioner filed his Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (*Id.* ¶ 13; Pet. ¶ 30.) On May 8, 2025, Petitioner had an individual merits hearing on his Form I-589 application. (Morrow Decl. ¶ 14; Pet. ¶ 30.) "At the hearing, the petitioner, through his attorney, withdrew his request for asylum and withholding of removal with prejudice after conceding he was ineligible for such relief, and indicated that he only wished to pursue deferral of removal under the CAT." (Morrow Decl. ¶ 14.) On May 23, 2025, the immigration judge (the "IJ") denied M.P.L.'s request for protection under the CAT and ordered him removed to El Salvador. (*Id.* ¶ 15.) On June 17, 2025, Petitioner timely filed a notice of appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 16.) The BIA set a briefing scheduling for Petitioner's appeal, with briefs due on September 23, 2025. (Doc. 25 ("Resps.' Obj.") at 1.) To date, Petitioner has been detained since February 27, 2025— for more than seven months.

On June 25, 2025, while Petitioner's removal proceedings were ongoing, Petitioner filed a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 under the name "M.P.L.,"

3

(Doc. 1), accompanied by a motion for leave to proceed anonymously, (Doc. 2), which I granted, (Doc 5).  On September 4, 2025, Magistrate Judge Aaron issued a Report and Recommendation recommending that I grant the Petition.  (Doc. 24.)  The Government filed its objections to the Report on September 18, 2025, (Doc. 25), and the Petitioner filed his response on October 2, 2025, (Doc. 26 ("Pet.'s Resp.")).

## II.     Legal Standard

Reviewing a magistrate judge's report and recommendation, I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  I review de novo the portions of the Report to which timely and specific written objections are made.  *See* Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error.  *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases).  "In addition, 'new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.'"  *Garcia v. Lamanna*, No. 18-CV-5454, 2022 WL 3445433, at *1 (S.D.N.Y. Aug. 17, 2022) (quoting *Razzoli v. Fed. Bureau of Prisons*, No. 12-CV-3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014)).

## III.     Discussion

### A.     *Petitioner is Entitled to a Bond Hearing*

The Government objects the Report's recommendation for three reasons.  First, the Government objects to Judge Aaron's application of the multi-factor test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to assess the constitutionality of Petitioner's detention, arguing

4

that due to the Government's "weighty interest in detaining certain criminal aliens," Petitioner's prolonged detention under § 1226 cannot be unconstitutional. (Resps.' Obj. 3.) The Government contends that Petitioner's "detention comports with due process and he is not entitled to a bond hearing." (*Id*. (capitalization altered).) Second, the Government requests that if I order a bond hearing, I should decline to hold the hearing myself and instead instruct that the hearing be held by an IJ. (*Id*. at 5.) Third, the Government urges a "reject[ion]" of a reading of the Report "to require that an adjudicator consider" mitigating measures "when assessing danger," but notes that it has "no issue" "[t]o the extent that the Report simply states that the adjudicator has the discretion of whether to consider such information with respect to danger." (*Id*. at 8.) I address each objection in turn.

1. **Application of the *Mathews* Factors to Petitioner's Due Process Challenge to His Prolonged Section 1226(c) Detention**

I first consider whether Petitioner's prolonged detention violates due process by applying the *Mathews* standard required by the Second Circuit in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024).[4] In *Black*, the Second Circuit observed that "[t]he Supreme Court has held that detention under section 1226(c) without an *initial* bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" *Id*. at 141 (quoting *Demore v. Kim*, 538 U.S. 510, 531 (2003) (emphasis in original)). However, the *Black* decision also explained that "*Demore* was careful to emphasize the relatively short duration of section 1226(c) detention, stressing data showing that detention under section 1226(c) lasts roughly a month and a half in 85% of cases, and four months where the noncitizen chooses to appeal." *Id*. at 151 (citing *Demore*, 538 U.S. at 529). "The Circuit

---

[4] The parties appear to agree that because Petitioner is detained pursuant to the provision of the INA providing for mandatory detention, codified at 8 U.S.C. § 1226(c), his constitutional challenge is governed by the framework set forth in *Black*. (*See* Resps.' Obj. 4–5, 8; Pet.'s Resp. 2–5.)

5

then concluded that, while due process does not require an initial bond hearing for noncitizens detained under § 1226(c), detention under § 1226(c) might become unreasonably prolonged so as to necessitate 'additional procedural protections,' such as a bond hearing." *J.M.P. v. Arteta*, No. 25-CV-4987, 2025 WL 2614688, at *2 (S.D.N.Y. Sept. 10, 2025) (quoting *Black*, 103 F.4th at 145).  Although the Second Circuit "reject[ed] a bright-line constitutional rule," requiring a bond hearing after a fixed period of detention, it held that courts should apply the balancing test in *Mathews*, 424 U.S. 319, "to assess, case by case, whether an individual's prolonged section 1226(c) detention violates due process." *Black*, 103 F.4th at 150.  Thus, I must "determin[e] when and what additional procedural protections are due" by applying to the petitioner's unique situation the three factors from *Mathews*:  "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Id*. at 138, 151 (quoting *Mathews*, 424 U.S. at 335).  Applying the *Mathews* factors in *Black*, the Second Circuit determined that the two petitioners in that case, who were detained under § 1226(c) without a bond hearing for seven months and twenty-one months, respectively, were entitled to "individualized bond hearings by an IJ." *Id*. at 155.  The Court further held that the government must "bear the burden of proving the need for continued detention" "by clear and convincing evidence." *Id*. at 155, 157.

*i.   The Private Interest*

With respect to the first *Mathews* factor, as with the petitioners in *Black*, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)).  One of the petitioners in *Black* was detained for seven months[5] without a bond hearing under the authority of 8 U.S.C. § 1226(c) and the Court held that the petitioner was "detained for far longer, and [his] liberty interests more seriously infringed" than the month-and-a-half long detentions that the Supreme Court contemplated in *Demore*. *Id*. (citing *Demore*, 538 U.S. at 513).  Likewise, M.P.L.'s seven-month detention far exceeds the "relatively short duration of section 1226(c) detention" envisioned in *Demore*. *Id*. (citing *Demore*, 538 U.S. at 513).  In *Black*, the petitioner faced a "seven-month-long detention [which] led unsurprisingly to serious financial difficulties for his family." *Id*.  "The same is true here, as [Petitioner] has been in detention for more than seven months and has been unable to contribute to his family's financial support in that time." *J.M.P.*, 2025 WL 2614688, at *3.  Like the petitioner in *Black*, M.P.L. "was the sole income provider before his detention" and "cared for" his family as members of his family "experienced ongoing health issues." *Black*, 103 F.4th at 151; *see also* Pet. ¶ 45; Doc. 16 ¶ 10.  Thus, the first *Mathews* factor weighs in Petitioner's favor.

*ii.   The Risk of an Erroneous Deprivation of Petitioner's Private Liberty Interests and the Probable Value of Additional Procedural Safeguards*

The second *Mathews* factor—"the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute

---

[5] References to the petitioner in *Black* will be to the petitioner that was detained for seven months without a bond hearing, unless indicated otherwise.

7

procedural safeguards"—also weighs in Petitioner's favor. 424 U.S. at 335. In analyzing this factor, "[t]he only interest to be considered . . . is that of the detained individuals—not the government." *Black*, 103 F.4th at 152. Here, as was true with respect to the petitioners in *Black*, "the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[] the risk of an erroneous deprivation of [Petitioner's] private liberty interests." *Id*. "[T]he procedures used for section 1226(c) detainees are very few," and its "broad reach means that many noncitizens are detained who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." *Id*. (internal quotation marks omitted). In the eighteen years that Petitioner has lived in the United States, he "has never been charged with a crime," (Pet. ¶ 47; *see also* RAP Sheet), has been living with his family in Queens, (Pet. ¶¶ 27, 51; Doc. 16 ¶ 4), was the "sole financial provider for [his] family," (Pet. ¶ 45; *see also* Doc. 16 ¶ 10), and was also providing support to his family in El Salvador, (Pet. ¶ 45; Doc. 16 ¶ 10). The Government does not dispute these facts. Thus, like the petitioner in *Black*, M.P.L. "was separated from his family, who relied on him as the sole income provider." 103 F.4th at 154. Petitioner "lived peacefully with his [family], assisting with [his mother's] medical needs while helping care for his [family]. By detaining [Petitioner] for many months without an individualized assessment, the government eliminated vital support for [Petitioner's] famil[y] and, potentially, served no public interest." *Id*. Taken together, like the petitioner in *Black*, M.P.L.'s "circumstances similarly suggest a high likelihood that he was subject to an erroneous deprivation of liberty as his section 1226(c) detention was prolonged." *Id*. at 153. Moreover, the minimal burden placed on the Government in granting Petitioner a bond hearing would add value by permitting review of Petitioner's custody status for the first time in over

seven months.

The Government objects to Magistrate Judge Aaron's rejection of its argument in opposition to M.P.L.'s habeas petition that M.P.L. has a procedural safeguard to challenge the basis of his mandatory detention—the *Joseph* hearing—in which an IJ would determine whether he in fact committed a crime that makes him properly included in one of the categories of mandatory detention under § 1226(c). (*See* Resps.' Obj. 4–5; Doc. 12 ("Resps.' Mem.") at 5–6 (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)); *see also* R&R 7 n.7.) The Government claims that the "Report relegated its rejection of the utility of a *Joseph* hearing to a footnote without giving appropriate consideration to its applicability in this case." (Resp.'s Obj. 4.) The Government concedes that "the *Black* court observed that the procedures for aliens detained under § 1226(c) 'include no mechanism for a detainee's release, nor for individualized review of the need for detention,'" but argues that "unlike in this case, *Black* did not involve a dispute over the applicable detention authority, and so *Joseph* hearings would not have resulted in individualized reviews of the petitioners' detention in that case." (*Id*. at 4–5 (quoting *Black*, 103 F.4th at 152).) The Government argues that because Petitioner "takes issue with the application of § 1226(c) to him on the ground that he provided material support to MS-13, subjecting him to the terrorism-related inadmissibility grounds ("TRIG") bar under 8 U.S.C. § 1182(a)(3)(B)," if he "were to move for a *Joseph* hearing and then carry his burden at that hearing and demonstrate that he is not properly subject to detention under § 1226(c), he would then be eligible to receive a bond hearing under § 1226(a)—which would necessarily implicate an immigration judge's 'individualized review of the need for detention.'" (*Id*. at 5 (quoting *Black*, 103 F.4th at 152).) In essence, the Government argues that a *Joseph* hearing, which Petitioner did not request, is a sufficient substitute to a bond hearing.

9

However, "[t]his misunderstands the purpose of requiring a bond hearing. A *Joseph* hearing permits release from detention if the detainee can demonstrate that the underlying bases for invoking § 1226(c), *e.g.*, conviction of deportable offense, did not apply to him. . . . As the Supreme Court recognized, however, contesting the grounds of initial § 1226(c) detention requires a different consideration from holding a bond hearing to determine whether an alien needs to remain detained based on a flight risk or danger to the community." *Cruz v. Decker*, No. 18-CV-9948, 2019 WL 7572975, at *7 (S.D.N.Y. Aug. 27, 2019), report and recommendation adopted, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (noting that a detainee "may avoid mandatory detention by demonstrating [at a *Joseph* hearing] that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.")). Although the Government may be correct that an IJ making a detention decision in a *Joseph* hearing would conduct an individualized review, a *Joseph* hearing "does not involve an analysis of risk of flight or dangerousness," which is the "appropriate inquiry" at a bond hearing. *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108, at *8 n.7 (S.D.N.Y. July 25, 2018) (rejecting Government's argument that "a *Joseph* hearing . . . is sufficient due process . . . not only because the relevant inquiry differs, but because the standard is all but insurmountable to the individual, and does not take into account potential defenses to removal" (internal quotation marks omitted)); *see also Falodun v. Session*, No. 18-CV-06133, 2019 WL 6522855, at *11 (W.D.N.Y. Dec. 4, 2019) ("At a *Joseph* hearing, the sole question is whether the alien is an 'alien described' in § 1226(c); there is no inquiry into the Government's putative regulatory interests in detention, such as risk of flight or dangerousness. Thus, the Court finds, a *Joseph* hearing cannot be seen as an adequate procedural substitute for a

bond hearing."); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 330 (3d Cir. 2021) ("'[D]ue process requires individualized procedures to ensure there is at least some merit to the [Government's] charge' that a noncitizen is subject to mandatory detention under § 1226(c), and . . . the *Joseph* hearing framework does not provide this surety." (quoting *Demore v. Kim*, 538 U.S. 510, 531 (Kennedy, J., concurring))); *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *8 (W.D.N.Y. Nov. 2, 2018), *enforcement granted sub nom. Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019) ("The proceedings that the government argues support Hechavarria's due process, such as a *Joseph* hearing, have no relation to the government's purported regulatory interests in detaining him. . . . [A]t a *Joseph* hearing, the § 1226(c) detainee has the burden of proving that he should not be a § 1226(c) detainee, and the government's regulatory purposes in detention itself—for example risk of flight or dangerousness—are irrelevant. Given the length of [the petitioner's] detention [of more than five years and three months], that is simply not good enough."). Accordingly, I conclude that "a *Joseph* hearing is no substitute for the process to which [Petitioner] is entitled under the Fifth Amendment." *J.M.P.*, 2025 WL 2614688, at *4. Therefore, this factor also weighs in favor of Petitioner.

### iii.   The Government's Interest

Lastly, the third *Mathews* factor—which considers "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"—also favors Petitioner. 424 U.S. at 335. The Government notes that the Report recognized the interests of (1) "ensuring [a] noncitizen's appearance at proceedings" and (2) "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others," (Resps.' Obj. 3

11

(citing R&R 7 (internal quotation marks omitted)); *see also* Resps.' Mem. at 8), which are the same interests identified by the Government in support of its detention of noncitizens in *Black*. *See Black*, 103 F.4th at 153 (noting that the Government "identified two primary interests in support of unlimited mandatory detention: (1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others"). The Government states that it "maintains a legitimate interest in detaining an admitted gang member with a serious criminal history, where removal proceedings have moved swiftly over 6.5 months and are at this point being prolonged only to accommodate M.P.L.'s merits appeal of his removal order to the BIA." (Resps.' Obj. 3.) However, as the Second Circuit noted in *Black,* ordering a bond hearing as an "additional procedural safeguard[] . . . [does] nothing to undercut those interests," because "[a]t any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community." 103 F.4th at 153–54. Indeed, although "the [G]overnment's legitimate interests justify a relatively short-term deprivation of liberty, the balance of interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need." *Id*. at 154 (internal citation omitted). In addition, requiring a bail hearing where the Government must justify continued detention also "minimize[s] the enormous impact of incarceration in cases where it serves no purpose," which is of "paramount" importance. *Id*.

"Here, like one of the petitioners in *Black*, [Petitioner] has been detained for more than seven months without an individualized assessment of whether he presents a flight risk or a danger to the community." *J.M.P.*, 2025 WL 2614688, at *5. Although the Government contends that it has a "legitimate interest" in detaining Petitioner because he is an "admitted gang

12

member with a serious criminal history," (Resps.' Obj. 3), "a number of mitigating factors might well lead an immigration judge to conclude that [Petitioner's] past [arrest for, among other things, aggravated homicide in El Salvador][6] does not make him a danger to the community today, such as [Petitioner's] young age at the time; . . . the nearly [twenty] years he has since spent living a peaceful and productive life; and the fact that [Petitioner] has no criminal convictions in the United States.  Similarly, the coerced . . . nature of the [recruitment] to [MS-13] many years ago, . . . might [] support his release on bond because [it] do[es] not suggest any danger to the community here in the United States." *J.M.P.*, 2025 WL 2614688, at *5.

Thus, I conclude that the third *Mathews* factor also favors Petitioner.  Accordingly, having applied the *Mathews* factors as required by the Second Circuit, I find that due process entitles Petitioner to an individualized bond hearing by an IJ.

### 2. The Immigration Judge Must Hold the Bond Hearing

The Report cited a recent decision holding that a District Judge, as opposed to an IJ, may hold a bond hearing and deferred to me on whether to hold the bond hearing myself or order a hearing before an IJ.  (R&R 10 n.8 (citing *L.G.M. v. LaRocco*, No. 25-CV-2631, 2025 WL 2092027 (E.D.N.Y. June 25, 2025)).)  Respondent argues that, if I determine a bond hearing is required, I should direct an IJ to hold a bond hearing.  (Resp.'s Obj. 5–6.)  Petitioner argued during oral argument in front of Magistrate Judge Aaron and in his response to Respondent's objections that I should hold the bond hearing.  (R&R 10 n.8; Pet.'s Resp. 5–10.)  Petitioner cites the same recent authority from the Eastern District of New York that the R&R cited, and essentially argues that an order from me requiring a bond hearing before an IJ would be an

---

[6] According to the RAP sheet, Petitioner was arrested for, among other things, aggravated homicide on October 24, 2006.  (Rap Sheet at 2.)

exercise in futility because of the DHS' "recent practice of unilaterally imposing an automatic stay of release pending its appeal of an immigration judge's grant of bond." (Pet.'s Resp. 5; *see also id*. at 5–10.) However, Petitioner has not shown that he would not receive a fair bond hearing by an IJ upon my order to do so. Moreover, the *LaRocco* decision specifically noted "particular circumstances of [that] Petition. . . [which] ma[d]e th[at] matter atypical," including: "a complicated immigration history in which Petitioner was found removable, then granted deferred action, which is now subject to a pending appeal, coupled with a complicated ICE detention history in which Petitioner was transferred to a Louisiana ICE detention facility while his habeas petition has been pending in this district." 2025 WL 2092027, at *4. These facts led the district court to "retain[] jurisdiction over constitutional questions that ar[o]se within [the petitioner's] adjudication of bond hearings." *Id*. However, none of these "atypical" facts are present here. As such, I find that the appropriate remedy is a bond hearing before an IJ.

### 3. The Immigration Judge Must Consider Alternatives to Detention and Ability to Pay in Making a Bond Determination

The Government's finally objects "[t]o the extent that the Report could be read to require that an adjudicator consider" mitigating measures, rather than "simply stat[ing] that the adjudicator has the discretion of whether to consider such information with respect to danger." (Resps.' Obj. 8.) As the Report explains, "the Government interprets *Black* to hold that Petitioner's ability to pay and alternatives to detention only should be considered with respect to the assessment of flight risk and not as to the assessment of danger." (R&R 8; *see also* Resps.' Obj. 8–9; Resps.' Mem. 10–11.)[7] I disagree with the Government's reading of *Black*.

---

[7] In opposition to the Petition and in its objections to the Report, the Government notes its disagreement with the *Black* decision and that it has petitioned the Second Circuit for rehearing of that decision. (Resps.' Mem. 10 n.3; Resps.' Obj. 8 n.1.) The Government also "acknowledges that, unless and until the Second Circuit's decision is vacated, overruled, or abrogated, [*Black*] remains good law," (Resps.' Mem. 10 n.3), and that "the initial burden

14

At the bond hearing, the IJ must consider alternative conditions of release before making a determination regarding whether to set a bond—that is, the IJ must consider alternatives to detention that may ameliorate both risk of flight and dangerousness—and must additionally consider the Petitioner's ability to pay when setting any bond amount.  *See J.C.G. v. Genalo*, No. 24-CV-08755, 2025 WL 88831, at *11 (S.D.N.Y. Jan. 14, 2025) ("In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider the Petitioner's ability to pay.").  "Several other courts in this circuit have likewise found that immigration judges must examine alternatives to detention and ability to pay when determining both flight risk *and* dangerousness." *Hernandez-Aviles v. Decker*, No. 20-CV-7636, 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) (emphasis in original) (collecting cases); *Cabrera Galdamez v. Mayorkas*, No. 22-CV-9847, 2023 WL 1777310, at *9 (S.D.N.Y. Feb. 6, 2023) ("At that [bond] hearing, the Government shall bear the burden of demonstrating by clear and convincing evidence that Petitioner is a danger to the community or a risk of flight, considering Petitioner's ability to pay for a bond and alternatives to detention."); *Garcia v. Decker*, No. 22-CV-6273, 2023 WL 3818464, at *6 (S.D.N.Y. June 5, 2023) ("[T]he Government bears the burden to demonstrate, by clear and convincing evidence, that a noncitizen's continued detention is justified by his present dangerousness and risk of flight.  In assessing this issue, the immigration judge should also consider Petitioner's ability to pay and the availability of alternative means of assuring his appearance." (internal quotation marks omitted and alteration adopted)).  Similarly, other courts in the Circuit have held that the IJ must consider whether less restrictive alternatives

---

would be on ICE to prove that continued detention is justified by clear and convincing evidence," (Resps.' Obj. 8 n.1).

15

may ameliorate the risk of danger. *See Cantor v. Freden*, 761 F. Supp. 3d 630, 640–41 (W.D.N.Y. 2025) ("[T]he hearing requires a neutral decisionmaker to address whether alternatives to detention might ameliorate risk of danger as well as risk of flight. . . . In determining whether [the petitioner] poses a danger to the community, the IJ also must consider whether that danger may be mitigated by reasonable alternatives to detention."); *Da Silva Luciano v. Bondi*, No. 25-CV-06106, 2025 WL 1380327, at *1 (W.D.N.Y. Apr. 18, 2025) ("At this bond hearing, the government will have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence. In deciding whether the government has met its burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention."); *O.F.C. v. Decker*, No. 22-CV-2255, 2022 WL 4448728, at *10 (S.D.N.Y. Sept. 12, 2022) ("[I]t is not clear why an IJ may not consider alternative conditions of release in deciding the danger question, since an immigrant's dangerousness to the community may be addressed by the imposition of certain conditions of release."); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 139 (W.D.N.Y. 2021) ("Due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence, where the IJ considers whether less-restrictive alternatives to detention could mitigate that risk, and where the IJ considers ability to pay and alternative conditions of release in setting bond."); *Fajardo v. Decker*, No. 22-CV-3014, 2022 WL 17414471, at *12 (S.D.N.Y. Dec. 5, 2022) ("To the extent that alternatives to detention may sufficiently guard the public against danger from the noncitizen were he released from custody, such is an appropriate part of considering dangerousness, just as consideration of alternatives to detention of a criminal defendant—for example, electronic monitoring, home confinement, or the imposition of a personal recognizance bond co-signed by

family and/or supported by the posting of security—is a routine part of the process by which the decision between detention and release is made.").

"Accordingly, the following conditions must be in place at [Petitioner's] individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that [Petitioner] poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider [Petitioner's] ability to pay if a monetary bond is set." *Reid v. Decker*, No. 19-CV-8393, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020).

## IV. Conclusion

For the reasons stated above, the Governments objections are overruled, the Report is ADOPTED, and M.P.L.'s Petition for a Writ of Habeas Corpus is GRANTED. The Government shall provide an individualized bond hearing to Petitioner to determine whether his continued detention is justified within 14 days of this Opinion & Order. At the bond hearing, which must be before a neutral IJ, the Government must bear the burden of showing, by clear and convincing evidence, that Petitioner presents an unreasonable flight risk or threat to the community that cannot be mitigated by reasonable conditions of supervision or monetary bond. "In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider Petitioner's ability to pay, though it shall remain within the IJ's discretion to determine the influence those considerations shall have on the IJ's ultimate decision." *O.F.C.*, 2022 WL 4448728, at *11. Should the Government fail to provide such a hearing within 14 days of this Opinion & Order, the Government shall release Petitioner from detention.

The Government shall file a status letter to update me about Petitioner's status and the outcome of the bond hearing within 7 days of its occurrence.

SO ORDERED.

Dated: October 16, 2025
      New York, New York

Vernon S. Broderick
United States District Judge